IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTONIO SERNA            (01) | No.   3:20−CR−00170- E |

# INFORMATION

The United States Attorney for the Northern District of Texas charges:

At all times material to this Information:

### General Allegations

### The TRICARE Program Generally

1.  TRICARE was a health care program of the United States Department of Defense (DoD) Military Health System that provided coverage for DoD beneficiaries world-wide, including active duty service members, National Guard and Reserve members, retirees, their families, and survivors.  Individuals who received health care benefits through TRICARE were referred to as TRICARE beneficiaries.  The Defense Health Agency (DHA), an agency of the DoD, was the military entity responsible for overseeing and administering the TRICARE program.  TRICARE provided coverage for certain prescription drugs, including certain compounded drugs, if they were medically necessary and prescribed by a licensed physician or nurse practitioner.  Express Scripts, Inc. (Express Scripts) administered TRICARE's prescription drug benefits.

2.  TRICARE was a "health care benefit program" as defined by 18 U.S.C. § 24(b), that affected commerce, and as that term is used in 18 U.S.C. § 1347.

Defendant

3. **Antonio Serna**, a resident of Plano, Texas, owned and operated Military Medical Relief 21 Corp, (MMR21). MMR21 provided discounts on various items and services to members of the military and to military veterans who signed-up for MMR21 memberships. In approximately December 2014, **Serna** agreed with Company A[1], a compounding pharmacy, to refer MMR21 members to Company A in return for a kickback of 40% of the proceeds that Company A received for filling prescriptions for MMR21 members.

Uncharged Coconspirators[2]

4. Individual 1, a licensed physician and resident of Arizona, agreed with **Serna** to conduct telephone evaluations of MMR21 members and prescribe compounded drugs to them in return for a kickback from **Serna**.

5. Individual 2, a licensed physician and resident of El Paso, Texas, agreed with **Serna** to conduct telephone evaluations of MMR21 members and prescribe compounded drugs to them in return for a kickback from **Serna**.

6. Individual 3, a licensed nurse practitioner and resident of El Paso, Texas, agreed with **Serna** to conduct telephone evaluations of MMR21 members and prescribe compounded drugs to them in return for a kickback from **Serna**. Individual 1 was Individual 3's supervising physician.

---

[1] The true identity of Company A is known to the United States Attorney.

[2] The true identities of Individuals 1, 2, and 3 are known to the United States Attorney.

**Information—Page 2**

Count One
Conspiracy to Commit Health Care Fraud
(Violation of 18 U.S.C. § 371 (18 U.S.C. § 1347))

7. Paragraphs 1 through 6 of this Information are realleged and incorporated by reference as though fully set forth herein.

8. From around December 2014, through on or about June 16, 2016, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, **Antonio Serna**, did knowingly and willfully combine, conspire, confederate, and agree with Company A, Individual 1, Individual 2, Individual 3, and others known to the United States Attorney, to violate 18 U.S.C. § 1347, that is, to devise and to execute a scheme and artifice (i) to defraud a health care benefit program affecting commerce, that is, TRICARE, and (ii) to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, TRICARE, in connection with the delivery of, and payment for, health care benefits and items, namely, compounded drugs.

Purpose of the Conspiracy

9. It was a purpose of the conspiracy for the defendant and his coconspirators to unlawfully enrich themselves through the submission of claims to Express Scripts for compounded drugs prescribed to TRICARE beneficiaries without legitimate regard to their medical necessity, which prescriptions had been induced by kickbacks paid, or promised to be paid, to TRICARE beneficiaries, by kickbacks paid, or promised to be paid, to Individuals 1, 2, and 3, and by kickbacks paid, or promised to be paid by

Company A to **Serna**, and to conceal those facts from DHA, TRICARE, and Express Scripts.

## Manner and Means of the Conspiracy

10. The manner and means by which the defendant and his coconspirators sought to accomplish the purposes of the conspiracy included, among other things:

## The Scheme to Defraud

11. The defendant and his coconspirators devised and executed a scheme to defraud TRICARE by paying and receiving illegal kickbacks in connection with the prescription of compounded drugs to TRICARE beneficiaries without legitimate regard to the medical necessity of the prescriptions.

## Payment of Kickbacks to TRICARE Beneficiaries

12. As part of the scheme to defraud, and in violation of the Federal Anti-Kickback Statute, **Serna** offered to pay and did pay TRICARE beneficiaries, including several who lived in the Northern District of Texas, approximately $250 per prescription to obtain prescriptions from Company A. **Serna** disguised these kickbacks as payments for participating in a study that did not, in fact, exist. At Individual 1's suggestion, **Serna** further disguised some of these kickbacks by funneling them through American Christian Warrior 13 Inc., a non-profit charitable organization owned and controlled by **Serna**. American Christian Warrior did not, in fact, have any purpose other than paying illegal kickbacks.

Payment of Kickbacks to Prescribers

13. As part of the scheme to defraud, and in violation of the Federal Anti-Kickback Statute, **Serna** offered to pay Individuals 1, 2, and 3, and did pay Individuals 2 and 3 to prescribe compounded drugs to MMR21 members. Individuals 1 and 2 knew that **Serna** was disguising patient kickbacks with the non-existent study. **Serna** funneled these kickbacks through American Christian Warrior 13 and another business entity he owned, LS Labs LLC.

Solicitation and Receipt of Kickbacks by **Serna**

14. As part of the scheme to defraud, and in violation of the Federal Anti-Kickback Statute, **Serna** solicited and received kickbacks from Company A in return for referring MMR21 members and their prescriptions to Company A.

Prescriptions Written Without Legitimate Regard to Medical Necessity

15. As part of the scheme to defraud, and in violation of TRICARE's rules regarding the practice of telemedicine, Individuals 1, 2, and 3, prescribed compounded drugs to TRICARE beneficiaries, including some who lived in the Northern District of Texas, after conducting cursory telephone calls with the beneficiaries and without conducting any face-to-face physical examination, taking any of the patients' vital signs, running any diagnostic tests, trying any alternate therapies or medications, or coordinating with any of the beneficiaries' primary care physicians or other health care providers. Some of the phone calls to beneficiaries by Individuals 1, 2, and 3, lasted less than five minutes. On multiple occasions, Individual 1 spoke with a TRICARE

beneficiary by phone, but Individual 2 wrote the prescription, thus concealing from Express Scripts, TRICARE, and DHA, the true identity of the prescribing physician.

### Overt Acts in Furtherance of the Conspiracy

16.  In furtherance of the conspiracy and to bring about its purpose, the following overt acts, among others, were committed in the Northern District of Texas and elsewhere, by at least one conspirator:

Kickbacks Received by **Serna** from Company A

(a)  On or about January 5, 2015, **Serna** received a kickback from Company A by wire transfer to LS Labs LLC (BBVA Compass Account x7002) for $23,732.36.

(b)  On or about January 16, 2015, **Serna** received a kickback from Company A by wire transfer to LS Labs LLC (BBVA Compass Account x7002) for $118,353.53.

(c)  On or about February 9, 2015, **Serna** received a kickback from Company A by wire transfer to LS Labs LLC (BBVA Compass Account x7002) for $320,269.93.

(d)  On or about February 13, 2015, **Serna** received a kickback from Company A by wire transfer to LS Labs LLC (BBVA Compass Account x7002) for $342,758.53.

(e)  On or about March 3, 2015, **Serna** received a kickback from Company A by wire transfer to LS Labs LLC (BBVA Compass Account x7002) for $551,532.94.

(f)  On or about March 16, 2015, **Serna** received a kickback from Company A by wire transfer to LS Labs LLC (BBVA Compass Account x7002) for $606,662.34.

(g)  On or about April 1, 2015, **Serna** received a kickback from Company A by wire transfer to LS Labs LLC (BBVA Compass Account x7002) for $837,458.59.

(h)  On or about April 16, 2015, **Serna** received a kickback from Company A by wire transfer to LS Labs LLC (BBVA Compass Account x7002) for $847,365.58.

(i)  On or about May 5, 2015, **Serna** received a kickback from Company A by wire transfer to LS Labs LLC (BBVA Compass Account x7002) for $79,899.36.

(j)  On or about May 21, 2015, **Serna** received a kickback from Company A by wire transfer to LS Labs LLC (BBVA Compass Account x7002) for $34,433.18.

Kickbacks Paid by **Serna** and Solicited or Received by Individuals 1, 2, and 3

(k)  **Serna** caused LS Labs LLC to pay Individual 3 $13,725.00 by check dated January 22, 2015 (check no. 7025 from BBVA Compass Account x7002, memo line "Loan").

(l)  On or about January 30, 2015, Individual 2 emailed **Serna** and Individual 3 stating, in part, "Tony, Can you please get with [Individual 3] or myself. It took up to today to get re-reimbursed for the prior invoice. We just need to get this organized to allow for faster turn around of payment. We expedite calls... lets work on expediting our payments."

(m)  On or about February 4, 2015, Individual 2 emailed Individual 3 and **Serna** stating, "[Individual 3], Tony asked I get with you for payment on the 54 patients. Thanks." **Serna** replied to Individual 2 and Individual 3 stating, "Ok. no problem. I'll coordinate the payment to go out this Friday."

(n)  **Serna** caused American Christian Warrior 13 to pay Individual 3 $8,370.00 by check dated February 10, 2015 (check no. 0904 from BBVA Compass Account x6204). Consistent with the email conversation on February 4, 2010, **Serna** caused the memo line on the check to read, "54."

(o)  **Serna** caused American Christian Warrior 13 to pay Individual 2 $3,780.00 by check dated February 10, 2015 (check no. 0905 from BBVA Compass Account x6204, memo line "54 – 02-04-2015").

(p)  **Serna** caused LS Labs LLC to pay Individual 2 $3,825.00 by check dated March 4, 2015 (check no. 0905 from BBVA Compass Account x7002).

(q) **Serna** caused LS Labs LLC to pay Individual 3 $9,500.00 by check dated March 4, 2015 (check no. 8902 from BBVA Compass Account x7002).

(r) **Serna** caused LS Labs LLC to pay Individual 3 $1,000.00 by check dated March 4, 2015 (check no. 0903 from BBVA Compass Account x7002).

(s) **Serna** caused American Christian Warrior 13 to pay Individual 3 $9,000.00 by check dated April 10, 2015 (check no. 1085 from BBVA Compass Account x6204).

(t) **Serna** caused American Christian Warrior 13 to pay Individual 3 $9,000.00 by check dated April 14, 2015 (check no. 1111 from BBVA Compass Account x6204).

(u) **Serna** caused American Christian Warrior 13 to pay Individual 3 $9,000.00 by check dated April 17, 2015 (check no. 1140 from BBVA Compass Account x6204, memo line "Consulting").

(v) **Serna** caused American Christian Warrior 13 to pay Individual 2 $11,925.00 by check dated April 21, 2015 (check no. 1142 from BBVA Compass Account x6204).

(w) **Serna** caused American Christian Warrior 13 to pay Individual 3 $9,000.00 by check dated April 22, 2015 (check no. 1154 from BBVA Compass Account x6204).

(x) **Serna** caused American Christian Warrior 13 to pay Individual 3 $15,975.00 by check dated May 2, 2015 (check no. 1186 from BBVA Compass Account x6204).

(y) **Serna** caused American Christian Warrior 13 to pay Individual 3 $6,975.00 by electronic transfer on or about July 27, 2015 (ACH PMT REF- x6420).

(z) On or about June 16, 2016, Individual 3 mailed **Serna** requesting payment of $2,125.00 for 17 patients.

Prescriptions Written by Individuals 1, 2, and 3

(aa) On or about December 17, 2014, Individual 3 prescribed two compounded drugs to TRICARE beneficiary B.Y., who lived in Garland, Texas, which is

        in the Northern District of Texas, which were filled by Company A on December 22, 2014.

(bb) On or about January 30, 2015, Company A filled four compound drug prescriptions prescribed by Individual 2 for TRICARE beneficiary T.W., who lived in Euless, Texas, which is in the Northern District of Texas.

(cc) On or about March 21, 2015, Individual 2 directed Individual 1 by email to call five TRICARE beneficiaries, including D.G., R.G., and A.C., "on behalf of MMR21" to evaluate them for various compounded drugs.

(dd) On or about March 21, 2015, Individual 1 conducted an approximately two-minute long telephonic evaluation of TRICARE beneficiary D.G., after which Individual 2 prescribed two compounded drugs to him.

(ee) On or about March 21, 2015, Individual 1 conducted an approximately three-minute long telephonic evaluation of TRICARE beneficiary R.G., after which Individual 2 prescribed two compounded drugs to him.

(ff) On or about March 21, 2015, Individual 1 conducted a telephonic evaluation of TRICARE beneficiary A.C., after which Individual 2 prescribed three compounded drugs to her.

(gg) On or about March 23, 2015, Individual 2 conducted an approximately one-minute long telephonic evaluation of TRICARE beneficiary J.K., after which Individual 2 prescribed four compounded drugs to her.

(hh) On or about April 26, 2015, Individual 1 spoke with TRICARE beneficiary G.P. by telephone to evaluate him for a compounded pain cream and a compounded scar cream. Individual 1 informed Individual 2 that G.P. did not have any scar complaints. Thereafter, Individual 2 prescribed a compounded pain cream and a compounded multivitamin to G.P.

(ii) On or about May 6, 2015, Company A filled two compound drug prescriptions prescribed by Individual 2 for TRICARE beneficiary J.W., who lived in Fort Worth, Texas, which is in the Northern District of Texas.

(jj) On or about May 6, 2015, Individual 3 prescribed one compounded drug to TRICARE beneficiary C.M., who lived in Springtown, Texas, which is in

the Northern District of Texas, which was filled by Company A the same day.

Kickbacks to TRICARE Beneficiaries

(kk)  **Serna** caused American Christian Warrior 13 to pay TRICARE beneficiary T.W. $500.00 by check dated March 10, 2015 (check no. 0909 from BBVA Compass Account x6204, memo line "ACW13 Questionnaire") in exchange for filling prescriptions by Individual 2.

(ll)  **Serna** caused American Christian Warrior 13 to pay TRICARE beneficiary T.W. $500.00 by check dated April 6, 2015 (check no. 1078 from BBVA Compass Account x6204, memo line "CM SAS-1427984502") in exchange for filling prescriptions by Individual 2.

(mm)  **Serna** caused American Christian Warrior 13 to pay TRICARE beneficiary T.W. $500.00 by check dated May 5, 2015 (check no. 1197 from BBVA Compass Account x6204, memo line "CM SAS-1430451593") in exchange for filling prescriptions by Individual 2.

(nn)  **Serna** caused American Christian Warrior 13 to pay TRICARE beneficiary A.C. $250.00 by check dated May 12, 2015 (check no. 1282 from BBVA Compass Account x6204, memo line "CM SAS-1431395852") in exchange for filling a prescription written by Individual 2 based on a telephone evaluation conducted by Individual 1.

(oo)  **Serna** caused American Christian Warrior 13 to pay TRICARE beneficiary I.C. $250.00 by check dated May 18, 2015 (check no. 1252 from BBVA Compass Account x6204, memo line "CM SAS-1430668889") in exchange for filling a prescription by Individual 3.

### Effect on TRICARE

17.  Had DHA, TRICARE, and Express Scripts been aware that payments were being made to **Serna**, Individual 2, Individual 3, and TRICARE beneficiaries as set forth above, and that the prescriptions were generated without legitimate regard to their

medically necessity as set forth above, the claims for reimbursement for the compounded drugs would have been denied and not paid.

17. The defendant and his coconspirators caused TRICARE to suffer an actual loss of more than $4 million.

All in violation of 18 U.S.C. § 371 (18 U.S.C. § 1347).

ERIN NEALY COX
UNITED STATES ATTORNEY

*/s/ Doug Brasher*
DOUGLAS B. BRASHER
Assistant United States Attorney
Texas State Bar No. 24077601
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:   214-659-8604
Facsimile:    214-659-8802
douglas.brasher@usdoj.gov


 */s/ Renee M. Hunter*
RENEE M. HUNTER
Assistant United States Attorney
Texas State Bar No. 24072942
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Email: renee.hunter@usdoj.gov


  */s/ Ryan Raybould*
RYAN RAYBOULD
Assistant United States Attorney
Kansas State Bar No. 25429
1100 Commerce Street, 3rd Floor
Dallas, Texas  75242
Email: ryan.raybould2@usdoj.gov